United States District Court
District of Massachusetts

```
                                  )
NEW ENGLAND ENVIRONMENTAL         )
TECHNOLOGIES,                     )
            Plaintiff,            )
                                  )   Civil Action No.
            v.                    )   09-10632-NMG
                                  )
AMERICAN SAFETY RISK RETENTION    )
GROUP, INC. and AMERICAN SAFETY   )
INSURANCE SERVICES, INC.,         )
            Defendants.           )
                                  )
```

MEMORANDUM & ORDER

GORTON, J.

Plaintiff New England Environmental Technologies ("NEET")
brings suit against American Safety Risk Retention Group, Inc.,
an insurance company, and American Safety Insurance Services,
Inc., its program manager, (collectively, "American Safety") for
breach of an insurance contract. Before the Court are the
parties' cross-motions for summary judgment.

I.   Background

The following facts are undisputed:

NEET is a small, family-owned Massachusetts corporation
engaged in the business of environmental consulting. Its
services include, inter alia, environmental site assessment and
remediation, underground storage tank testing and installation,
removal and disposal services. It currently has three full-time
employees (including the two owners) and two temporary employees.

NEET purchased several consecutive insurance policies from American Safety including: 1) Policy No. ENV012446-06-01 (March 2, 2006 - March 2, 2007) ("the 06-01 Policy", 2) Policy. No. ENV012446-07-02 (March 2, 2007 - March 2, 2008) ("the 07-02 Policy") and 3) Policy No. ENV012446-08-03 (March 2, 2008 - March 2, 2009) ("the 08-03 Policy). The consecutive policies provide various insurance coverages including Commercial General Liability Coverage and Environmental Consultant's Professional Liability Coverage.

Each of the policies is a "claims made" policy which means that it applies only if the claim was "first made against, and reported to [the insurer], by the insured, in writing, during the policy period." Notably, each policy contains an Automatic Extended Reporting Period ("AERP") which provides, in relevant part:

> Upon termination of this policy for any reason other than nonpayment of premium or non-compliance with the terms and conditions of this policy, a "claim" first made against the Insured and reported to us, in writing, within 30 days of the end of the policy period will be deemed to have been made on the last day of the policy period.

The AERP provision also contains the following limitation:

> The Automatic Extended Reporting Period shall only apply if no other similar insurance is in force at the time of the Automatic Extended Reporting Period. The Automatic Extended Reporting Period shall not in any way reinstate or increase the Limits of Insurance or extend the policy period.

-2-

In 1995, NEET was hired by Churchill Forge Properties ("CFP") to install a containment structure for three above-ground fuel storage tanks at an apartment complex in Haverhill, Massachusetts. On March 28, 2007, fuel oil was observed leaking from a tank storage shed at the CFP apartment complex. The leak released approximately 780 gallons of fuel oil into the land and required the removal of approximately 300 cubic yards of contaminated soils and groundwater monitoring.

On February 7, 2008, counsel for CFP issued a demand letter to NEET pursuant to Massachusetts General Laws, Chapter 21E, Section 4A, asserting that NEET had improperly installed the heating oil tanks at the CFP apartment complex and was legally responsible for remediating the oil contamination ("the CFP claim"). The letter demanded that NEET pay damages totaling almost $200,000 and requested a response within 45 days. CFP's demand letter was received by a receptionist at NEET on February 14, 2008, but NEET's owners were not informed of the demand until at least February 26, 2008.

On the morning of March 2, 2008, at 12:01 a.m., the 07-02 Policy expired and the 08-03 Policy took effect. Four days later, on March 6, 2008, NEET forwarded CFP's demand letter to its insurance agent, HUB International LLC, for transmission to American Safety which was done the following day, March 7, 2008. On March 26, 2008, American Safety issued a letter to NEET

-3-

acknowledging receipt of CFP's demand letter and reserving its
rights pending the completion of a coverage investigation.

On July 7, 2008, CFP filed suit against NEET, alleging
substantially the same allegations that it made in its demand
letter. It also sought damages based on NEET's alleged failure
to respond to its demand letter within 45 days.

On July 31, 2008, American Safety denied coverage of the CFP
claim on the grounds that 1) it was neither received nor reported
during the term of the 06-01 Policy (March 2, 2006 - March 2,
2007), 2) it was received during the term of the 07-02 Policy
(March 2, 2007 - March 2, 2008) but not reported until after the
policy had expired (on March 7, 2008) and 3) it was reported
during the term of the 08-03 Policy (March 2, 2008 - March 2,
2009) but had been first made against the insured prior to the
policy's inception. The letter also stated that the AERP of the
07-02 Policy did not apply because "NEET maintained other similar
insurance in effect after March 2, 2008." The "other similar
insurance" to which American Safety refers is its own 08-03
Policy.

## II. Procedural History

On February 27, 2009, NEET filed suit against American
Safety in Massachusetts Superior Court Department for Essex
County, alleging 1) breach of contract (Count I) and 2) unfair
and deceptive trade practices in violation of Chapters 93A and

-4-

176D of the Massachusetts General Laws (Count III) and 3) the right to a declaratory judgment that American Safety is obligated to defend and indemnify NEET's claims (Count II).

On April 21, 2009, American Safety removed the case to this Court pursuant to 28 U.S.C. §§ 1332 and 1446, asserting diversity of citizenship between the parties (American Safety is incorporated and has its principal place of business in Georgia) and an amount in controversy exceeding $75,000. On November 11, 2009, NEET moved for summary judgment that American Safety has a duty to defend against the CFP claim under Policy 07-02 (Counts I and II). On December 15, 2009, American Safety opposed NEET's motion and filed its own cross-motion for summary judgment. American Safety contends that it has no duty to defend and that it did not engage in any unfair or deceptive trade practices.

Because the parties' affirmative arguments for summary judgment are substantively similar to their oppositions to the summary judgment motions of their opponents, the cross-motions are considered together.

## III. Analysis

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)(quoting Garside v. Osco Drug, Inc., 895 F.2d 46,

-5-

50 (1st Cir. 1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

**B.  Application**

**1.  Duty to Defend**

Under Massachusetts law, the interpretation of an insurance policy and the application of policy language to undisputed facts pose questions of law to be decided by a court.  Nascimento v. Preffered Mutual Ins. Co., 513 F.3d 273, 276 (1st Cir. 2008) (citing Herbert A. Sullivan, Inc. v. Utica Mut. Ins., 788 N.E.2d 522, 530 (Mass. 2003)).  The Court's inquiry into coverage is guided by principles of insurance policy interpretation which are briefly summarized as follows.

Generally, the insured bears the burden of demonstrating that a claim falls within the policy's affirmative grant of coverage.  Hakim v. Massachusetts Insurers' Insolvency Fund, 675 N.E. 2d 1161, 1166 n. 13 (Mass. 1997); Markline Co. v. Travelers Ins. Co., 424 N.E.2d 464, 465 (Mass. 1981).  The insurer, however, bears the burden of proving any applicable exclusion, as that is an affirmative defense to coverage.  Murray v. Continental Ins. Co., 48 N.E.2d 145, 146-47 (Mass. 1943).  Policy exclusions are to be strictly construed against the insurer. Camp Dresser & McKee, Inc. v. Home Ins. Co., 568 N.E.2d 631, 635 (Mass. App. Ct. 1991) (internal citation omitted).

An insurance contract, just as any other contract, is to be construed according to the "fair and reasonable meaning of its words."  Camp Dresser, 568 N.E.2d at 635.  When contractual

-7-

language is ambiguous, a court must construe it in favor of the insured and against the insurer, the drafter. Boston Gas Co. v. Century Indem. Co., 910 N.E.2d 290, 305 (Mass. 2009). An ambiguity exists when contractual language is "susceptible of more than one meaning," or, in other words, when "reasonably intelligent persons would differ as to which one of two or more meanings is the proper one." Jefferson Ins. Co. of N.Y. v. Holyoke, 503 N.E.2d 474, 474-75 (1987):

> Words that are clear and unambiguous, by themselves, may be ambiguous when read in the context of the entire insurance contract or as applied to the subject matter.

Id. at 477. An ambiguity is not, however, "created simply because a controversy exists between parties," each favoring an adverse interpretation. Id. at 475. In the absence of ambiguity, the court must construe the words of the policy in their "usual and ordinary" sense and enforce its language "in accordance with its terms". Stankus v. N.Y. Life Ins., 44 N.E.2d 687, 688-89 (Mass. 1942).

If the policy includes language "which permits two rational interpretations," the court is obligated to "choose the one more favorable to the insured." Camp Dresser, 568 N.E.2d at 635 (internal citation omitted). The court should also consider "what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." Boston Gas, 910 N.E.2d at 305 (citation omitted).

-8-

This case concerns the interpretation of a "claims made" or "claims made and reported" insurance policy. A brief comparison of the distinction between "claims made" and "occurrence" policies frames the Court's discussion. Although both policies aim to insure a policyholder during a specified period of time, an occurrence policy focuses on when the conduct occurs and provides coverage if the covered act or omission occurs within the policy period, regardless of the date of discovery. Chas T. Main, Inc. v. Fireman's Fund Ins. Co., 551 N.E.2d 28, 29 (Mass. 1990). A claims made policy, on the other hand, is premised on when the claim is asserted against the insured and provides coverage for claims made and reported during the policy period or a specified period thereafter, regardless of when the covered act or omission occurred. Id. at 29.

The purpose of the notice requirement in a claims-made policy is to "minimize the time between the insured event and the payment," thereby ensuring "fairness in rate-setting." Id. at 29. As the Massachusetts Supreme Judicial Court has explained,

> [t]he closer in time the insured event and the
> insurer's payoff are, the more predictable the amount
> of pay-off will be, and the more likely it is that
> rates will fairly reflect the risks taken by the
> insurer.

Id. at 30. Because claims made policies allow insurers to avoid the risks associated with future inflation, the prospect of increasing jury awards and changes in the law of professional

liability, premium rates tend to be significantly lower than for comparable occurrence policies. See, e.g., DiLuglio v. New England Insurance Company, 959 F.2d 355, 358 (1st Cir. 1992).

Massachusetts law makes clear that coverage under a claims made policy is contingent on two requirements: 1) the claim must be first made against the insured during the policy period ("the claim requirement") and 2) the claim must be reported to the insurer within the policy period ("the notice requirement"). Gargano v. Liberty International Underwriters, Inc. 572 F.3d 45, 49 (1st Cir. 2009) (citing Chas T. Main, 551 N.E. 2d at 30). The requirement that notice of the claim be given to the insurer "in the policy period or shortly thereafter ... is of the essence in determining whether coverage exists." Chas T. Main, 551 N.E. 2d at 30.

Here, it is undisputed that the CFP claim was "first asserted" against NEET on February 14, 2008, the date that CFP issued its demand letter. Because that date falls squarely within the 07-02 Policy period, the claim requirement is easily satisfied. The critical inquiry is, therefore, whether the notice requirement was fulfilled. NEET, by its own admission, did not report the claim to American Safety until March 6, 2008, four days after the 07-02 Policy expired. Thus, coverage under the 07-02 Policy is predicated on the operation of its 30-day AERP which, if applicable, would extend coverage for claims

-10-

"first made against [NEET] and reported to [American Safety], in writing, within 30 days of the end of the policy period" (March 2, 2008). By the terms of the policy, the AERP "only appl[ies] if no other similar insurance is in force" during those 30 days.

American Safety contends that the AERP does not cover the CFP claim because 1) the claim was not made during the AERP's 30-day period and 2) NEET had "other similar insurance" at the time, precluding the operation of the clause. Each of those arguments is addressed in turn.

### a. The "First Made" and "Reported" Provision

American Safety asserts that the plain and unambiguous language of the policy mandates that claims be both made and reported to the insurer during the AERP's 30-day period. Under that construction of the provision, because the CFP claim was not "first made" against NEET "within 30 days of the end of the policy period" (but rather was made prior to the policy's expiration), the AERP is inapplicable notwithstanding that the claim was reported during the subject 30 days.

NEET contends, on the other hand, that the clause is ambiguous and could reasonably be interpreted to allow an insured to report claims made during the policy period for a period of 30 days following the policy's expiration. That construction is supported by the provision's title, "Automatic Extended Reporting Period," (emphasis added) and is consistent with the way

-11-

Massachusetts and other courts have construed extending reporting provisions. See, e.g., Chas. T. Main, 551 N.E.2d at 29 (defining claims made policies as those covering "claims made during the policy year and reported within that period or a specified period thereafter") (emphasis added); Checkrite Limited, Inc. v. Illinois National Insurance Co., 95 F. Supp. 2d 180, 191 (S.D.N.Y. 2000) ("The nature of a claims made policy is that it protects the insured for claims made against it and reported to the insurer within the policy period or, if applicable, the extended reporting period."); see generally, Couch on Insurance §§ 102:20, 102:24, 186:13 (and cases cited therein).

Although this is a close call, the Court finds that the AERP's coverage clause is susceptible of more than one meaning and that NEET's construction is preferable. Although the relevant policy language ("first made against [NEET] and reported to [American Safety] ... within 30 days of the end of the policy period") could suggest that claims covered by the AERP must be both made and reported during the 30-day period, an insured could reasonably construe it otherwise, particularly given that the clause is prefaced by the bold-faced headings "EXTENDED REPORTING PERIOD OPTION" and "Automatic Extended Reporting Period." See Jefferson Ins. Co. of N.Y., 503 N.E.2d at 477 (noting that words that appear unambiguous by themselves may be ambiguous when "read

-12-

in the context of the entire insurance contract or as applied to
the subject matter").

    As noted above, the hallmark of a "claims made" policy is
that the claim is asserted against the insured during the policy
period. See Chas T. Main, 551 N.E.2d at 29. The purpose of the
extended reporting option is to provide a short period after a
policy's expiration within which the insured may report a claim
that occurred during the policy period and still obtain coverage.
NEET's interpretation of the AERP comports with the intended
purpose of the reporting period and the expectations of an
objectively reasonable insured.

    Moreover, the purpose of strict adherence to the claim and
notice requirements of claims made policies is to provide greater
certainty with respect to claim underwriting, allowing insurers
to provide coverage for lower premiums. See DiLuglio, 959 F.2d
at 358. Here, where NEET reported the CFP claim five days after
the policy expired and within its AERP, American Safety cannot
reasonably suggest that the delay had a meaningful impact on its
ability to set future premiums. See National Fire Ins. Co. v.
Talcott, 931 F.2d 166, 167 (1st Cir. 1991) (noting that the
purpose of a claims made policy is to "minimize the time between
the insured event and the payment"). American Safety's reliance,
therefore, on cases involving policyholders who reported claims
well after the expiration of the policies (or their extended

-13-

reporting periods) is misplaced. See, e.g., Talcott, 931 F.2d at
167 (claim was not reported to insurer until "well after" policy
expiration); Tenovsky v. Alliance Syndicate, 677 N.E.2d 1144,
1145 (Mass. 1997) (claim reported 18 months after policy
expiration); J.I. Corp. v. Federal Ins. Co., 730 F. Supp. 1187,
1188 (D. Mass. 1990) (claim reported more than three years after
policy expiration); Chas T. Main, 551 N.E.2d at 29 (claim
reported almost two years after expiration); Gargano, 572 F.3d at
49 (insured was aware of claim in 2005 but did not report it to
the insurer until after a judgment issued against him two years
later, well outside the coverage period); DiLuglio, 959 F.2d at
356 (insured became aware of claims over three years before he
reported them to insurer).

In sum, given that both parties have proffered rational
interpretations of the contractual language, the Court is obliged
to choose the construction proposed by the insured. See Camp
Dresser, 568 N.E.2d at 635. Under that interpretation, because
NEET reported the CFP claim within 30 days of the expiration of
the 07-02 Policy, it falls within the coverage of the AERP.

b.    The "Other Similar Insurance" Provision

Given that the CFP claim was reported during the AERP,
coverage hinges on the application of the so-called "other
similar insurance" limitation.    That provision, by its terms,
precludes operation of the AERP if "other similar insurance is in

-14-

force at the time." The policy does not, however, define the term "other similar insurance," making it impossible to determine, from the text alone, if the term refers exclusively to other kinds of policies (i.e., occurrence policies) and policies purchased from other carriers, or if it also extends to renewal policies provided by the same carrier. Given this uncertainty, reasonably intelligent persons could disagree as to the term's meaning.

American Safety contends that the AERP was inoperative because the 08-03 Policy, which took effect immediately upon termination of the 07-02 Policy, constitutes "other similar insurance." In support of its argument, American Safety explains that NEET's policies do not renew automatically and that each is a separate, stand-alone, one-year contract. It cites several cases in which courts have found that extended reporting periods are not activated when an insured renews its policy with the same company. See Checkrite Limited, Inc. v. Illinois National Insurance Company, 95 F. Supp. 2d 180 (S.D.N.Y. 2000); Ehrgood v. Corgeis Insurance Company, 59 F. Supp. 2d 438 (M.D. Penn. 1998).

The cited cases are, however, inapposite because the subject policies were governed by substantially different terms than the policy at issue here. In the policies in Checkrite and Ehrgood, the extending reporting period was not triggered automatically but was rather available as an "option" that could be purchased

-15-

only if the policy was "cancelled or non-renewed". 95 F. Supp. 2d at 186; 59 F. Supp. 2d at 446. Checkrite, 95 F. Supp. 2d at 193-94; Ehrgood, 59 F. Supp. 2d at 446-47. Here, on the other hand, the subject reporting period is "automatic" and operates unless "other similar insurance is in force at the time." Thus, unlike the policies at issue in Ehrgood and Checkrite, which unambiguously barred operation of the extended reported period upon renewal, the 07-02 Policy can reasonably be interpreted to activate the AERP under such circumstances.

The Court agrees with the plaintiff that the 08-03 Policy does not constitute "other similar insurance". Although the 08-03 Policy is, of course, distinct from the 07-02 Policy, it was purchased as a renewal policy that was intended to provide seamless, identical coverage from one year to the next.

Moreover, the first sentence of the AERP states that it applies

upon termination of this policy for any reason other than non-payment of premium or non-compliance with the terms and conditions of this policy.

That language logically implies to the policyholder that the AERP is effective unless the policyholder's relationship with American Safety ends poorly, i.e., for failure to pay or comply with the policy's terms. If, as American Safety suggests, the "other similar insurance" requirement precludes operation of the clause upon policy renewal, the two provisions are contradictory.

-16-

Whereas the first indicates that the AERP applies so long as the policy expires in the ordinary course, the latter implies that the AERP is inapplicable in cases where the policy expires in the ordinary course and is renewed. Because such an outcome is counterintuitive to a reasonable insured, the more logical interpretation of the AERP is that the insured enjoys its protections unless 1) the policy is canceled for failure to comply or pay premiums or 2) the insured is also covered by another kind of insurance policy (i.e., an occurrence policy or a policy provided by another carrier). See Cast Steel Products, Inc. v. Admiral Ins. Co., 348 F.3d 1298, 1304 (11th Cir. 2003) (the renewal of a claims-made policy "should not precipitate a trap wherein claims spanning the renewal are denied") (citing Helberg v. Nat'l Union Fire Ins. Co., 657 N.E.2d 832, 834 (Ohio Ct. App. 1995)).

In the alternative, NEET argues that the AERP, as interpreted by American Safety, is void as a matter of public policy on the grounds that it is misleading and unrealistically limited. Given that the Court agrees with NEET's interpretation of the extended AERP, a discussion of public policy is unnecessary.

In sum, the Court finds that 1) the AERP was applicable because NEET did not have "other similar insurance" at the time and 2) NEET complied with the requirements of the AERP by reporting the claim within the 30-day extension period. As such,

the CFP claim is covered by the 07-02 Policy and American Safety has a duty to defend NEET against it. Summary judgment will enter for the plaintiff on Counts I and II.

## 2. Unfair and Deceptive Trade Practices

Defendant has also moved for summary judgment on Count III of the plaintiff's complaint, which states a claim for unfair and deceptive trade and claims settlement practices in violation of Chapters 93A and 176D of the Massachusetts General Laws.

### a. Chapter 93A

Chapter 93A proscribes those engaged in trade or commerce from employing "unfair methods of competition and unfair or deceptive acts or practices" and authorizes business to sue one another for engaging in such practices. M.G.L. c. 93A, §§ 2, 11. Because there is no clear definition of an "unfair or deceptive act," liability under Chapter 93A is a question of fact. See Incase, Inc. v. Timex Corp., 421 F. Supp. 2d 226, 239 (D. Mass. 2006).

In the context of disputes among businesses, where both parties are sophisticated commercial players, the "objectionable conduct must attain a level of rascality that would raise an eyebrow to the rough and tumble of the world of commerce." Vision Graphics v. E.I. Dupont De Nemours, 41 F. Supp. 2d 93, 101 (D. Mass. 1999) (internal citation omitted); Anthony's Pier Four, Inc. v. HBC Assocs., 583 N.E.2d 806, 822 (Mass. 1991). Thus, to

prove a violation of Chapter 93A, NEET must show that American Safety's conduct fell within "the penumbra" of some "established concept of unfairness" or was "immoral, unethical, oppressive or unscrupulous". PMP Assocs., Inc. v. Globe Newspaper Co., 321 N.E.2d 915, 918 (Mass. 1975).

NEET cannot meet that burden. The AERP is reasonably subject to multiple interpretations and, given that American Safety's coverage position was based on a "plausible interpretation" of the policy's terms, it did not violate Chapter 93A. Gulezian v. Lincoln Ins. Co., 506 N.E.2d 123, 127 (Mass. 1987) (insurance company that denies a claim of coverage on basis of plausible interpretation of its insurance policy does not violate Chapter 93A); see Ferrra & DiMercurio, Inc. v. St. Paul Mercury Ins. Co., 169 F.3d 43, 56 (1st Cir. 1999); Polaroid Corp. v. Travelers Indem. Co., 616 N.E.2d 912, 916 (Mass. 1993).

Moreover, there are no facts to suggest that American Safety's position was undertaken in bad faith or that its practices violate an "established conception of unfairness". To the contrary, the record indicates that the parties disagreed over the insurers' coverage obligations and that American Safety thoroughly reviewed the claim before denying it. Accordingly, the denial of coverage, though ultimately erroneous, does not warrant Chapter 93A liability.

#### b.   Chapter 176D

Chapter 176D prohibits insurance companies from engaging in
unfair or deceptive claims settlement practices, including 1)
misrepresenting pertinent facts or policy provisions, 2) failing
to respond promptly to claims, 2) failing to adopt and implement
reasonable standards for investigating claims, 3) denying claims
without conducting a reasonable investigation, 4) failing to
effectuate prompt and equitable settlement of claims in which
liability has become reasonably clear and 5) failing to provide
promptly a reasonable explanation of the basis under which a
claim is denied.  M.G.L. c. 176D, § 3(9)(a-f), (n).

NEET contends that American Safety violated Chapter 176D by
1) misrepresenting various policy provisions and 2) failing to a)
respond to the CFP demand letter in a timely fashion, b) adopt
and implement reasonable standards for the prompt settlement of
claims and c) provide a reasonable basis for denying coverage of
the CFP claim.

NEET's Chapter 176D claim fails for the same reasons that
its 93A claim fails.  As discussed above, liability for unfair
settlement practices by an insurer does not attach merely because
the insurer erroneously concludes that it has no liability under
insurance policy.  Pediatricians, Inc. v. Provident Life & Acc.
Ins. Co., 965 F.2d 1164, 1173 (1st Cir. 1992); Premier Ins. Co.
of Massachusetts v. Furtado, 703 N.E.2d 208, 210 (Mass. 1998).

Because American Safety based its denial on a plausible, albeit erroneous, interpretation of the policy language, its conduct did not constitute a violation of Chapter 176D.

Likewise, there are no facts to support NEET's claim that American Safety acted in bad faith with respect to the timing of its coverage determination. On March 26, 2008, less than three weeks after receiving notice of the claim, American Safety issued a comprehensive, 25-page reservation of rights letter. The letter did not provide a definitive answer as to whether American Safety would defend the claim but clearly indicated that it had serious coverage concerns. After reciting in detail the applicable policy provisions, the letter reserved American Safety's rights to deny coverage based on NEET's failure to provide notice during the 07-02 Policy period and the "no other similar insurance" provision contained in the AERP. Based on the information in that letter, NEET was enabled to respond to CFP's demand letter within 45 days of receiving it. American Safety ultimately denied coverage on July 31, 2008, on the bases identified in its March 26 reservation of rights letter.

Thus, although the Court disagrees with American Safety's interpretation of the policy language, it finds that it nevertheless acted in a reasonably prompt manner in communicating with NEET about the CFP claim and provided a timely and reasonable basis for denying coverage. Accordingly, there is no

-21-

reason to believe that American Safety failed to adopt and implement reasonable standards for the prompt investigation of claims and NEET will not be permitted conduct discovery concerning the insurer's claims handling procedures.

Finally, NEET contends that American Safety repeatedly misrepresented that its policies contained a pollution exclusion (and even asserted that exclusion as a reason for denying coverage of the CFP claim) when the exclusion had been deleted and replaced with a more favorable provision. NEET also asserts that American Safety denied coverage on the purported basis that CFP had not asserted a "malpractice" claim when that is not a stated requirement for coverage. The factual record is not well developed with respect to those arguments but even assuming American Safety misstated its policy provisions, NEET has provided no evidence that it did so in bad faith or with the intention to mislead.

Thus, because American Safety acted with the good faith belief that it was not obligated to defend the CFP claim, it did not engage in unfair trade or claims settlement practices and is entitled to summary judgment on Count III of NEET's complaint.

**ORDER**

In accordance with the foregoing,

1) Plaintiff's Motion for Summary Judgment on the Duty to Defend under Policy No. ENV0102446-07-02 (Counts I and II) (Docket No. 14) is **ALLOWED**; and

2) Defendants' Motion for Summary Judgment (Docket No. 18) is, with respect to Count III, **ALLOWED**, but is otherwise **DENIED**.

**So ordered.**

Nathaniel M. Gorton
United States District Judge

Dated September *15*, 2010

-23-