```
                    United States District Court
                      District of Massachusetts
_____
                            )
NEW ENGLAND ENVIRONMENTAL    )
TECHNOLOGIES CORPORATION,    )
         Plaintiff,          )
                             )   Civil Action No.
         v.                  )   09-10632-NMG
                             )
AMERICAN SAFETY RISK RETENTION )
GROUP, INC. and AMERICAN SAFETY )
INSURANCE SERVICES, INC.,    )
         Defendants.         )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff New England Environmental Technologies Corporation ("NEET") brings suit against American Safety Risk Retention Group, Inc., an insurance company, and American Safety Insurance Services, Inc., its program manager, (collectively, "American Safety") for breach of an insurance contract. Various motions are pending before the Court.

**I.   Background**

    **A.   Factual Background**

NEET is a family-owned, Massachusetts corporation with three full-time employees. It is engaged in the business of environmental consulting, offering services such as environmental site assessment and remediation, underground storage tank testing and installation, and removal and disposal services.

NEET purchased several consecutive, "claims made" insurance policies from American Safety including: 1) Policy No. ENV012446-06-01 (March 2, 2006 - March 2, 2007) ("the 06-01 Policy", 2) Policy. No. ENV012446-07-02 (March 2, 2007 - March 2, 2008) ("the 07-02 Policy") and 3) Policy No. ENV012446-08-03 (March 2, 2008 - March 2, 2009) ("the 08-03 Policy).[1] The consecutive policies provide various insurance coverages, including Commercial General Liability Coverage and Environmental Consultant's Professional Liability Coverage. Each policy contains a 30-day Automatic Extended Reporting Period ("AERP").

In 1995, NEET was hired by Churchill Forge Properties ("CFP") to install a containment structure for three above-ground fuel storage tanks at an apartment complex in Haverhill, Massachusetts. On March 28, 2007, fuel oil was observed leaking from a tank storage shed at the CFP apartment complex. The leak released approximately 780 gallons of fuel oil into the land and required the removal of approximately 300 cubic yards of contaminated soils and groundwater monitoring.

On February 7, 2008, counsel for CFP issued a demand letter to NEET pursuant to Mass. Gen. Laws ch. 21E, § 4A asserting that NEET had improperly installed the heating oil tanks at the CFP apartment complex and was legally responsible for remediating the oil contamination ("the CFP claim"). The letter demanded that

---

[1] In January, 2010, the parties stipulated that plaintiff does not seek coverage under the 06-01 Policy.

NEET pay damages totaling almost $200,000 and requested a response within 45 days.  CFP's demand letter was received by a receptionist at NEET on February 14, 2008, but NEET's owners were not informed of the demand until at least February 26, 2008.

Just after midnight, on March 2, 2008, the 07-02 Policy expired and the 08-03 Policy took effect.  Four days later, on March 6, 2008, NEET forwarded CFP's demand letter to its insurance agent, HUB International LLC, for transmission to American Safety which was done the following day, March 7, 2008.  On March 26, 2008, American Safety issued a letter to NEET acknowledging receipt of CFP's demand letter and reserving its rights pending the completion of a coverage investigation.

On July 7, 2008, CFP filed suit against NEET, <u>Churchill Forge Properties</u> v. <u>New England Environmental Technologies Corporation</u>, Massachusetts Superior Court Department for Essex County, Civil Action No. 08-1355 ("the underlying action"), making substantially the same allegations that it made in its demand letter.  It also sought damages based on NEET's alleged failure to respond to its demand letter within 45 days.

On July 31, 2008, American Safety denied coverage of the CFP claim on the grounds that 1) it was neither received nor reported during the term of the 06-01 Policy (March 2, 2006 - March 2, 2007), 2) it was received by the insured during the term of the 07-02 Policy (March 2, 2007 - March 2, 2008) but not reported

until after the policy had expired (on March 7, 2008) and 3) it was reported during the term of the 08-03 Policy (March 2, 2008 - March 2, 2009) but had been first made against the insured prior to the policy's inception.  The letter also stated that the AERP of the 07-02 Policy did not apply because "NEET maintained other similar insurance in effect after March 2, 2008."  The "other similar insurance" to which American Safety refers is its own 08-03 Policy.

### B. Procedural History

On February 27, 2009, NEET filed suit against American Safety in Massachusetts Superior Court Department for Essex County, Civil Action No. 09-0383, alleging 1) breach of contract (Count I) and 2) unfair and deceptive trade practices in violation of Mass. Gen. Laws ch. 93A and 176D (Count III) and 3) the right to a declaratory judgment that American Safety is obligated to defend and indemnify NEET for claims made against NEET (Count II).  In April, 2009, American Safety removed the case to this Court on the basis of diversity jurisdiction.

In November, 2009, NEET moved for partial summary judgment that American Safety had a duty to defend against the CFP claim under the 07-02 Policy (Counts I and II).  In December, 2009, American Safety opposed NEET's motion and filed its own cross-motion for summary judgment, contending it had no duty to defend or indemnify and did not engage in any unfair or deceptive trade

practices.[2]

On September 15, 2010, this Court issued a Memorandum and Order ("the SJ M&O") which held that: 1) American Safety had a duty to defend NEET under the 07-02 Policy and plaintiff's motion for partial summary judgment on the duty to defend was therefore, with respect to Counts I and II, allowed and 2) American Safety neither acted with bad faith nor engaged in unfair trade or settlement practices and defendant's motion for summary judgment was therefore, with respect to Count III, allowed but otherwise denied.  The Court denied the parties' subsequent cross-motions for reconsideration.

Following the SJ M&O, the Court directed the parties to submit briefs and supporting documentation on or before October 18, 2010, with respect to the issue of damages for American Safety's breach of the duty to defend.  On that deadline, plaintiff moved for an order to enter judgment in the amount of $233,115.64 for damages for the breach of the duty to defend, which defendants opposed.  Defendants also later moved to strike a paragraph of a declaration submitted by plaintiffs in support of the damages award.

On that same date, Churchill Forge Properties and Churchill Forge Associates II (collectively, "CFP") moved to intervene and

---

[2] In April, 2010, the parties jointly moved to stay the deadlines set forth in the Court's November 20, 2009 scheduling order and referral to ADR pending the Court's rulings on the cross-motions for summary judgment.

for judgment as a matter of law against American Safety in the amount of $253,940. American Safety opposed both motions and NEET submitted a statement without taking a position on the matter.

According to documentation submitted by CFP in support of its motion for judgment as a matter of law, CFP and NEET entered into a Settlement Agreement and Release dated August 25, 2010 ("the Settlement") in which, <u>inter</u> <u>alia</u>, NEET agreed 1) to settle all claims of CFP, including those related to the underlying action, for $250,000 and 2) to assign to CFP any and all claims and/or rights to payment or indemnification of that amount that NEET "has or may have" under the insurance policies, including those NEET "has or may have in the future arising out of any failure on the part of [American Safety] to pay or indemnify NEET [or CFP] for that amount".

Pending before the Court are plaintiff's motion for judgment in the amount of $233,115.64 for breach of the duty to defend, CFP's motions to intervene and for judgment in the amount of $253,940 and defendants' motion to strike.

**II.  Legal Analysis**

**A.  Motion to Strike**

Defendants move to strike paragraph four of the declaration of Brendan M. Clifford ("Clifford") dated November 26, 2010 [Docket No. 67] on the ground that its "sweeping generalizations

and assertions" comparing legal rates are beyond the scope permitted by the Federal Rules of Evidence. The paragraph states, in substance, that lawyers who work on behalf of insurance companies charge lower rates than those who work on behalf of policyholders.

Fed. R. Evid. 602 requires that a witness have personal knowledge of the matter to which he testifies, meaning the witness' inferences and opinions are grounded in personal observation and experience. See United States v. Doe, 960 F.2d 221, 223 (1st Cir. 1992). Evidence is inadmissible if the Court, in its discretion, determines the witness "could not have actually perceived or observed that which he testified to." United States v. Rodriguez, 162 F.3d 135, 144 (1st Cir. 1998).

Clifford has sufficient personal knowledge based on his 15 years of experience in the insurance industry during which he has worked for both policyholders and insurance companies, as well as his current responsibility to negotiate legal rates. See, e.g., United States v. Carlos Cruz, 352 F.3d 499, 505 (finding adequate personal knowledge in drug case based on six years of experience as agent). The Court will, therefore, deny defendants' motion to strike.

### B. Motion for Order to Enter Judgment in the Amount of $233,115.64

NEET moves for an order to enter judgment in the amount of $233,115.64 on Counts I and II for damages arising from American

Safety's breach of its duty to defend. The SJ M&O found American Safety had breached its duty to defend, and the issue pending before the Court is the amount of damages owed to plaintiff for that breach.

### 1. Legal Standard

An insurer's promise to defend and indemnify is the consideration received for an insured's payment of policy premiums. See Rubenstein v. Royal Ins. Co. of Am., 708 N.E.2d 639, 642 (Mass. 1999). Liability insurance thus also constitutes litigation insurance because the insured protects himself from the expense of defending suits brought against him. Id.

When an insurer breaches its duty to defend, the insured is entitled to contract damages. Liquor Liab. Joint Underwriting Ass'n of Mass. v. Hermitage Ins. Co., 644 N.E.2d 964, 968 (Mass. 1995). Contract damages are

> those that cannot be reasonably prevented and arise naturally from the breach, or which are reasonably contemplated by the parties.

Polaroid Corp. v. Travelers Indem. Co., 610 N.E.2d 912, 921 (Mass. 1993). The general principle is that "the aggrieved party should be put in as good a position as if the other party had fully performed." See, e.g., Williams v. B&K Med. Sys., Inc., 732 N.E.2d 300, 306 (Mass. App. Ct. 2000) (citing Laurin v. DeCarolis Constr. Co., 363 N.E.2d 675, 691 (Mass. 1977)).

An insurer who fails to defend is liable for "all defense costs." See Liberty Mut. Ins. Co. v. Metro. Life Ins. Co., 260 F.3d 54, 62 (1st Cir. 2001). That includes reasonable attorney's fees and costs incurred in the defense of the underlying action which the insurer refused to defend, Berke Moore Co. v. Lumbermens Mut. Cas. Co., 185 N.E.2d 637, 640 (Mass. 1962), as well as attorney's fees and costs incurred in the litigation which successfully established the insurer's duty to defend. Preferred Mut. Ins. Co. v. Gamache, 686 N.E.2d 989, 993 (Mass. 1997).

The insured bears the burden of proving the reasonableness of the attorney's fees and costs requested. See Liberty Mut. Ins. Co. v. Cont'l Cas. Co., 771 F.2d 579, 582 (1st Cir. 1985). Documentation submitted in support may include affidavits or declarations setting forth professional qualifications, hourly rates and detailed billing invoices. See Haddad v. Wal-Mart Stores, Inc., 920 N.E.2d 278, 282 (Mass. 2009). In determining the reasonableness of attorney's fees, the Court considers:

> the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases.

Linthicum v. Archimbault, 398 N.E.2d 482, 488 (Mass. 1979). Moreover, "no one factor is determinative" and the Court may consider the bills presented as a whole. See Berman v. Linnane,

-9-

748 N.E.2d 466, 469 (Mass. 2001).

    **2.  Application**

Plaintiff moves for an award of attorney's fees and costs in the amount of $233,115.64, including $14,440 in pre-judgment interest, for the costs incurred in defending the underlying action and establishing the defendant's duty to defend in this action.[3]  Defendant contends the request is excessive and offers to stipulate to an award of $45,000.

In determining the reasonableness of the amount requested, the Court considers the <u>Linthicum</u> factors.  First, NEET incurred defense costs in the underlying action from July 31, 2008, when American Safety denied coverage of the CFP claim, to August 25, 2010, when NEET and CFP reached a settlement agreement.  The underlying action alleged environmental statutory and common law liabilities against NEET in excess of $500,000, including approximately $325,000 incurred for clean up.  NEET, therefore, achieved a favorable result by settling the underlying action for $250,000 and obtaining a release from liability.  By settling, NEET also capped or precluded further legal fees with respect to the underlying action.

In addition, this action required significant time and research.  Indeed, NEET incurred its most substantial litigation

---

[3] Certain documentation subsequently submitted requests an award of $252,174.51 but the reason for the increase is unclear.

expenses from July 31, 2008, to September 15, 2010, when this Court issued the SJ M&O, finding in NEET's favor with respect to the duty to defend.

NEET has submitted affidavits detailing the professional qualifications and hourly rates of its attorneys.  Given the complexities of the litigation, the results obtained and the qualifications of the attorneys involved, the Court finds the hourly rates of $125 per paralegal, $180-220 per associate and $290-400 per partner or experienced attorney to be reasonable because they fall within the broad range of rates found reasonable in other cases.  See, e.g., Fronk v. Fowler, 2007 WL 1130381, *5 (Mass. Super. Feb. 23, 2007) (finding hourly rates of $110-195 per paralegal, $195-360 per associate and $450-575 per partner to be high but reasonable in the context of complex commercial litigation).

NEET has also submitted detailed billing invoices with minimal redactions for approximately 673 hours of legal services rendered from July, 2008, to October, 2010.  During that period, NEET nearly went bankrupt as a result of the legal fees incurred in the underlying action and, because of its inability to pay, had to retain three law firms.  Due to the overlapping legal representation, the billing invoices reflect some duplicative work and inefficiencies.  An insurer that refuses to defend, however,

cannot claim prejudice in the form of billing format or litigation practices that do not meet its standards, since it could have assumed the defense and imposed those standards.

Liberty Mut. Ins. Co. v. Black & Decker Corp., 383 F. Supp. 2d 200, 210 (D. Mass. 2004); see also Palermo v. Fireman's Fund. Ins. Co., 676 N.E.2d 1158, 1163 (Mass. App. 1997) ("An insurer who fails to defend its insured assumes the consequential risks of that breach of its insurance contract.").

Before submitting its supporting documentation, NEET made efforts to minimize duplicative work and to remove time spent on claims unrelated to the underlying action or the duty to defend litigation. Given the successful outcomes of both matters, as well as the adverse position in which American Safety placed NEET by breaching its insurance contract, the Court finds it reasonable to have retained multiple attorneys to work on similar issues.

Because of the overlapping billing periods, the Court reviews the billing invoices by firm to determine the reasonableness of the hours charged.

### a. Corwin & Corwin LLP (July, 2008, to September, 2008)

Attorney Charles F. Ahearn ("Ahearn"), a partner at Corwin & Corwin LLP who specializes in construction law, initially represented NEET when American Safety denied coverage in July, 2008. In August, 2008, Ahearn suggested that NEET retain an

attorney with more environmental and insurance coverage experience to handle both actions.

Corwin & Corwin billed NEET for $17,976 for legal fees and costs incurred from July, 2008, to November, 2009. Of that amount, $9,677 was incurred between July, 2008, and September, 2008, when Ahearn was NEET's sole legal counsel.

The remaining $8,299 of fees was, however, incurred in 2009, when attorney Brendan M. Clifford ("Clifford") was NEET's counsel. NEET claims that Ahearn remained involved as co-counsel in the duty to defend litigation, even though he directed NEET to retain legal representation with more relevant experience. Moreover, the invoice dated September 30, 2009 includes time spent researching the bad faith claim. The SJ M&O, however, ruled against NEET's bad faith claim and thus attorney's fees on that issue are not recoverable.

The Court finds, therefore, that an award of $9,677 for fees and costs incurred for the services of Corwin & Corwin from July, 2008, to September, 2008, is reasonable and appropriate. No additional fees charged by Corwin & Corwin are compensable.

### b. Anderson & Kreiger LLP (September, 2008, to January, 2009)

Attorneys Arthur Kreiger ("Kreiger"), an environmental attorney with 25 years of experience, and Rebekah Lacey ("Lacey"), an associate, of Anderson & Kreiger LLP served as counsel for NEET from September, 2008, to January, 2009, when

NEET could no longer afford to pay its attorneys. NEET retained the firm because of its experience in environmental and insurance matters.

Anderson & Kreiger billed NEET for $16,844, excluding $3,204 charged for pre-judgment interest on unpaid invoices, for legal services rendered from September, 2008, to January, 2009. The firm tried to limit the fees by charging most of the work performed at Lacey's hourly rate and did not charge NEET for work done in preparation for the transfer of the two matters to Clifford. The firm suggests, however, that the amount billed reflects goodwill discounts of $2,508 and thus the total value of its work is actually $19,352. NEET has failed to explain why it should receive the estimated value of the services rendered rather than the amount for which it was billed.

The Court finds, therefore, that an award of $16,844 for the services of Anderson & Kreiger is reasonable.

### c. Brendan M. Clifford, Esq. (January, 2009, to December, 2010)

Attorney Clifford, Assistant Vice-President and Associate General Counsel at Riverstone Claims Management LLC ("Riverstone") in Manchester, New Hampshire, served as NEET's primary legal counsel from January, 2009, to December, 2010. Clifford has over 15 years of experience in the insurance industry and previously worked at Holland & Knight LLP. NEET contacted Clifford in October, 2008, seeking legal advice and he

-14-

obtained special permission from Riverstone to represent NEET on his own personal time.

NEET entered into a fee agreement with Clifford because of its financial difficulties.  Clifford charged NEET an hourly rate of $375, based on his previous hourly rate of $320 at Holland & Knight in March, 2003.  The Court finds the hourly rate of $320, rather than $375, to be appropriate.

Clifford billed NEET for a total of $181,346 which includes $53,320 for attorney's fees and expenses in the underlying action and $128,026 in this action with respect to the duty to defend.  Clifford also billed for pre-judgment interest on unpaid invoices in the amount of $11,235.  Clifford adjusted his billing records to eliminate duplicate time spent conferring with NEET's prior counsel during transitional periods in the litigation.

NEET has submitted sufficiently detailed billing invoices from which the Court concludes that most of the amount requested is warranted.  The high number of billable hours (including several 12 and 14 billable hour days) in the November, 2009, invoice raises concerns because Clifford was not only working on this case on his personal time but also working a full time job at Riverstone.

The Court finds, therefore, an award of $140,000 for the legal services provided by Clifford to be reasonable.

### d. Pre-judgment Interest

NEET also moves for an award of pre-judgment interest on unpaid legal invoices at a rate of 12% per year pursuant to M.G.L. c. 231 § 6C, which provides:

> In all actions based on contractual obligations, upon a verdict, finding or order for judgment for pecuniary damages, interest shall be added by the clerk of the court to the amount of damages, at the contract rate, if established, or at the rate of twelve per cent per annum from the date of the breach or demand.

NEET requests $3,204 in interest on unpaid invoices to Anderson & Krieger LLP and $11,236 in interest on unpaid invoices to Attorney Clifford, for a total pre-judgment interest amount of $14,440.

The Court will award pre-judgment interest at the rate of 12% per year but in an exact amount to be determined by the clerk of the court.

### C. Motion to Intervene

Churchill Forge Properties and Churchill Forge Associates II move to intervene pursuant to Fed. R. Civ. P. 24 on the ground that "their legal rights and interests will be substantially affected by the determination(s) and order(s) on damages that may be rendered by this Honorable Court."

### 1. Legal Standard

Upon a timely motion pursuant to Fed. R. Civ. P. 24(a)(2), the Court must permit anyone to intervene who:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The putative intervenor must establish 1) the timeliness of its motion to intervene, 2) the existence of an interest relating to the transaction that forms the basis of the pending action, 3) a realistic threat that the disposition of the action will impede its ability to protect that interest and 4) the lack of adequate representation of its position by any existing party. R&G Mortg. Corp. v. Fed. Home Loan Mortg. Corp., 584 F.3d 1, 7 (1st Cir. 2009).

Although all four requirements must be satisfied, timeliness is the "prevenient question." Id. As the proceedings progress, the Court's scrutiny of a request to intervene "necessarily intensifies." Id. In examining timeliness, the Court should consider 1) the length of time that the putative intervenor knew or reasonably should have known that his interests were at risk before he moved to intervene, 2) the prejudice to existing parties should intervention be allowed, 3) the prejudice to the putative intervenor should intervention be denied and 4) any special circumstances militating for or against intervention. Id.

Upon a timely motion pursuant to Fed. R. Civ. P. 24(b)(1)(B), the Court may permit anyone to intervene who "has a

claim or defense that shares with the main action a common question of law or fact." In exercising its discretion in determining whether to allow permissive intervention, the Court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights. Fed. R. Civ. P. 24(b)(3).

### 2. Application

Because timeliness is a predominant factor, regardless of whether the putative intervenor seeks intervention as of right or permissive intervention, the Court first considers whether CFP's request is timely.

CFP moved to intervene in October, 2010, nearly 20 months after the Complaint was filed. CFP contends that it "petitioned to intervene as soon as practicable after gaining legal standing to do so." Yet, CFP admits that it gained that legal standing by virtue of the settlement no later than August, 2010, two months before it actually moved to intervene. CFP alternatively argues that it "petitioned to intervene as soon as it was possible and/or potentially appropriate." CFP, however, not only waited until after the Court had already issued the SJ M&O but also delayed another month and filed its petition to intervene on the same day plaintiff's motion with respect to damages was due.

CFP notes that its ability to protect its interests may be impaired if intervention is denied but also acknowledges that it

may file a separate suit to protect those interests. Any potential prejudice to the putative intervenor may be adequately remedied by bringing a separate action. See R&G Mortg., 584 F.3d at 10 (noting availability of adequate alternative remedy of bringing separate action softens any plausible claim of prejudice). Moreover, the prejudice to the existing parties from allowing intervention so late in the proceedings thus outweighs any potential prejudice to the putative intervenor. No special circumstances are apparent here.

With respect to the remaining factors in the intervention analysis, CFP has an interest relating to the transaction that forms the basis of the pending action but the disposition of the action will not impede its ability to protect its interests because it may bring a separate suit.

The Court will, therefore, deny the motion to intervene.

### D.   Motion for Judgment as a Matter of Law

Churchill Forge Properties and Churchill Forge Associates II move this Court to enter judgment against American Safety in the amount of $253,940, which is comprised of $250,000 for the Settlement Agreement entered into by NEET and CFP in the underlying action and $3,940 in attorney's fees to enforce that agreement. Because the Court will deny the motion to intervene, the motion for judgment as a matter of law will be denied as moot.

**ORDER**

In accordance with the foregoing,

1) defendants' motion to strike (Docket No. 68) is **DENIED;**

2) plaintiff's motion for an order to enter judgment in the amount of $233,115.64 (Docket No. 36) is **ALLOWED, in part, and DENIED, in part;** plaintiff is awarded legal fees in the amount of **$166,521 plus pre-judgment interest at the rate of 12% per year;**

3) motion to intervene by Churchill Forge Properties and Churchill Forge Associates II (Docket No. 47) is **DENIED;** and

4) motion for judgment as a matter of law by Churchill Forge Properties and Churchill Forge Associates II (Docket No. 48) is **DENIED as moot.**

**So ordered.**

       /s/ Nathaniel M. Gorton
       Nathaniel M. Gorton
       United States District Judge

Dated September 13, 2011